The United States Court of Appeals to the Federal Circuit is now open and in session. God save the United States and this Honorable Court. The case for argument this morning is 20-1264, Gamevice, Inc. v. ITC. Mr. Barney. Before we begin, this is Judge Dyke. I'd just like to mark the fact that this is the last argument in which Chief Judge Prost will preside as Chief Judge and that over the last seven years it's been a privilege and a great pleasure to sit on panels on which she has presided and to mark what an excellent job she's done in this and other respects as well. Well, this is Judge Prost. Thank you very much and I look forward to having you be my presiding person on all future panels, Judge Dyke. This is Judge Cleavenger. I'd like to join Judge Dyke's remarks in full. Thank you. Thank you very much. All right, Mr. Barney, your turn.  The Commission erred in construing fastening mechanism and retention member as means plus function limitations despite the presumption against 112F that applies because of the absence of the word means. I'd like to begin with fastening mechanism and I'd like to start with the claim language itself. It's undisputed that Claim 1 describes the fastening mechanisms as being interconnected with other structural components. In TechGlobal, in PAL, and in Samsung, this court held that such structural interconnectedness is consistent with structural claiming rather than functional claiming. Nintendo and the Commission don't dispute that there's structural interconnectedness in the claim. They only argue that this alone doesn't preclude 112F. We agree, but what TechGlobal and PAL and Samsung stand for is that when you begin with a presumption that 112F does not apply, which is the case here, structural interconnectedness in the claim language is consistent with that presumption. Well, Mr. Barney, this is Judge Prost. I don't think the specification contains any meaningful discussion of a fastening mechanism that would indicate that the term stands for a particular structure. If I'm wrong, can you point me to something in the spec? Sure. I would point to, first of all, the figures. Figure 16, if you go to appendix page 213, you see a figure that's described as a fastening mechanism. The patent is consistent in using the term fastening mechanism to refer to particular structures and particular components. That description can be found in columns 9 through 10, for instance, if you go to appendix page 240. Don't all of these suggest that many different structures could stand in as useful fastening mechanisms as opposed to a particular structure or class of structures? Well, there's no question that the term fastening mechanism is a broad term and that, yes, many different structures can fit within the definition of a fastener or fastening mechanism, but that alone does not mean that the term should be construed as a means-plus-function limitation. Greenberg was clear, the court was clear in Greenberg, that just because a term takes its name from a function and includes a wide variety of different structures and potentially even includes everything that performs that function, that does not convert it into a means-plus-function limitation. Mr. Barney, this is Judge Teich. It seems to me that looking at specification, you have a problem. I mean, I could imagine a context in which fastening mechanism would denote structure. For example, if there were two pieces of metal that were being fastened together, that, you know, a bolt and nut or a weld or something would be understood by someone skilled in the art as a fastening mechanism in that context. But here we have two things which seems to me quite unusual. First of all, the two things that are being connected to each other are not being directly connected. There's this intervening item of the cell phone. And second of all, when you look to the specification, it shows this soft draw latch as making the connection between the two, which is certainly a very unusual kind of fastening mechanism. So it seems to me there's nothing conventional about this situation and that your expert witness, in fact, didn't say anything about this kind of situation being something that someone skilled in the art would understand. It seems to be a unique type of situation which wouldn't call forth the usual understanding of fastening mechanism in a more conventional context such as metal-to-metal attachment. Your Honor, if I may, first of all, the patent, the claim is very clear that the fastening mechanism does secure two specific physical objects. It's securing, there's two fastening mechanisms in the claim. And they are securing the first confinement structure to the rigid structural bridge and then the fastening. I don't think you're really addressing what I'm saying. The idea of attaching two things together with an intervening cell phone by a soft draw latch is certainly an unusual kind of situation. It isn't a conventional situation such as a metal-to-metal attachment. I mean, am I wrong about that? I believe you are, Your Honor. In this claim, claim one, there's no intervening cell phone between the fastener. And so there's two fasteners in claim one because it's plural fastening mechanisms. They are securing the first confinement structure which is kind of one of the handheld units to the rigid structural bridge which is part of or included in what you're calling the cell phone. And then there's another fastening mechanism that is connecting the other side to that rigid structural bridge. So the fastening mechanism does not have an intervening component. Okay. But the soft draw latch is a kind of an unusual fastening mechanism, right? It isn't a conventional fastening mechanism. No, Your Honor. It's conventional. It's a draw latch like you have on your toolbox or like you would have on the old metal lunchboxes that you might have used in school. A draw latch is a very, very well-known conventional type of latch. I believe soft is just the fact that it's coated. You know, it's rubberized, so it's a rubberized draw latch. It's prior art, and it's only disclosed as one preferred embodiment. If you look at Column 9 on appendix page 242, it discloses that as in one embodiment, a soft draw latch such as that provided by SouthCo have been shown to be a useful fastening mechanism. So I don't think there's anything unusual or exotic about a draw latch. And, again, it's attaching two things in a very conventional manner. It's just two physical objects being connected together by a draw latch. So I just don't think there's anything exotic about that. Nintendo never made this argument that the latch itself is new or different. That argument was never made below. Had it been made below, we certainly would have been able to rebut that with a mountain of evidence. But they never made that argument below, which is why the record doesn't have anything on this particular argument they're now making that the draw latch itself is part of the invention. It is not. The invention is disclosed and described, for instance, in the summary of the patent, and that summary doesn't even talk about the fastening mechanism. So it's clearly not the gist or the point of novelty of the invention. Now, I would like to... The problem is that while they have put in expert testimony that the fastening mechanism would not be understood as meaning structure by someone skilled in the art, your expert didn't really do anything other than to say how he construed it. He didn't tell us what was referenced to any industry practice or anything like that, that this denoted structure. Well, our expert did explain that a fastening mechanism would be known to a person of ordinary skill in the art. He gave many examples of what the fastening mechanism could be. And I would go back to the fact that we have to start with the intrinsic evidence. So before we even dive into the extrinsic evidence, we have the intrinsic evidence. We have interconnectedness in the claim language, which Nintendo and the Commission don't dispute that there's interconnectedness. And under Tech Global and Powell, that interconnectedness is intrinsic evidence supporting the presumption against 112F. We've also got in the specification multiple embodiments in which the applicant used the term fastening mechanism to refer to these embodiments, which are illustrated as physical structures with physical components. And again, under Tech Global and Powell and Samsung, the consistent use of a term to refer to physical components in the specification is consistent with the presumption against 112F. So before you even get to the extrinsic evidence, we have the claim language, we have the presumption, we have interconnectedness, and we have consistent usage across multiple embodiments in the specification, all of which is intrinsic evidence supporting the legal presumption against 112F. I would submit that in that situation, where all of the intrinsic evidence is in support of the presumption and there is zero intrinsic evidence that rebutts or cuts against the presumption against 112F, it's really not necessary, and I would argue it's erroneous, to then go to the extrinsic evidence to see if that presumption can nevertheless still be rebutted somehow. So with respect to what the extrinsic evidence showed, what it showed was that fastening mechanism is a very broad term that includes essentially every mechanism that fastens. In other words, it's synonymous with fastener, which is exactly what we argued in terms of the Blackbird logic, the Blackbird decision. That was the testimony of Gamevice's expert, that it was a broad term that essentially covered everything that fastens. It's so broad that it includes anything that could perform the function. Doesn't that sort of suggest that it's a means plus function term rather than something that denotes a particular structure? No, Your Honor. The function in the claim is securing, and I disagree that the fastening mechanism, even under our expert's testimony, did not say that anything that performs the securing function is a fastening mechanism. You can secure two things together with, for instance, a friction interference fit, but that's not using a fastener. That's not using a fastening mechanism. Fastening mechanisms is a well-known class of mechanical structures known to those in the mechanical arts. It's not everything it secures. It's fasteners. And as the court in the Blackbird case… But it's everything that fastens, right? It arguably is everything that fastens. That's correct. It's a fastener, and fastener has been held to be structural in countless lower court decisions, not one from this court that I could find, but I think those district court decisions are not binding on this court, but they illustrate our point that terms like fastener or fastening mechanism or fastening device are ubiquitous in mechanical patents. They show up all the time. And the lower courts have had no problem consistently construing those to be structural. And the fact that they're broad and they could include, let's say, something like scotch tape, just means it's a broad term. And under this court's Greenberg decision and its progeny, the mere fact that a term is broad, that it has great breadth, does not equate to a lack of structural definiteness. And so we think that's the situation here. If I could, Your Honor, I'd like to switch to the other term at issue, unless there's other questions on fastening mechanism. Are you moving towards retention, Mr. Barnes? Yes, Your Honor. Let me just ask you one preliminary question about that. The commission says there's no dispute that there is no violation if the retention member is subject to means plus function treatment. Do you agree with that? Is that statement correct? Not quite, Your Honor. There's no dispute if the exact construction that the commission applied stands, then that is a correct statement. But we argue that even if it's construed under 112F, which we don't think it should be, but even if it is construed under 112F, the cylindrical shape of that retention member should not be part of the corresponding structure because even the commission concedes that it doesn't have anything to do with the function that's being performed. The commission was very clear and very specific about what it identified as the aspect that performs that function. What is your view as to what is properly the corresponding structure? What have you proposed as the corresponding structure? If it's construed as 112F, the corresponding structure is the recess or opening in the retention member 266, and that's not just me saying that. That's what the commission said. So if you look at page 43 of the appendix, appendix page 43, which is part of the commission's decision, middle of the page, this is where the commission is talking about the corresponding structure, and the commission says that the structure for performing the function of interacting with the fastening detent to restrain the structural bridge to a control module is the recess or opening of retention member 266 that captures the fastening detent 264. And in fact, that recess or opening is actually also in Gamevice's proposed construction because we proposed a structural construction that hewed closely to what the specification discloses. The cylindrical shape of the retention member has nothing whatsoever to do with performing that function, and that's from the commission's own decision. And so we would submit that even under 112F, which again, we don't believe should apply, but even if it does, the cylindrical shape should not be part of that corresponding structure under this court's cumulative decision and its progeny. And if that's the case, then we would not agree that the case is over because the cylindrical shape was the one aspect that was important. I think I heard, James, you can correct me if I'm wrong, but I do think I heard the bell ring. Am I right about that, James? That is correct, Judge Cross. Okay. So you're now into your rebuttal time, Mr. Barney, your choice to say that or to hear from the other side. Your Honors, unless there are specific questions about a retention member or anything else, I will reserve the rest of my time. Okay. Thank you. Ms. Fischer now, Fischer-Rowe. Sorry. Yes, Your Honor. Thank you. May it please the court. Both of the terms at issue here should be subject to means plus function treatment. In order to avoid 112F, each term must denote a particular structure or class structures known in the art. There's just no such evidence in the record here. The commission's factual findings on the extrinsic record are consistent with the claims in the specification, which do not establish the terms here are the name for structure or class of structures. Game vice chose not to offer any dictionary definitions for either term before the ALJ. And Mr. Steuben, his own expert testified for both of these terms that anything that is subject to means plus function would meet the limitations. Turning to the term fastening mechanism. I first want to discuss the evidence of record and then discuss the Blackbird case here. Mechanism is an undisputed non-sword and fastening is an undefined functional term. The term fastening mechanism itself does not note a structure or class of structures to a person of skill in the art. And there's nothing in the extrinsic or intrinsic record that changes this. The disclosure of the claims and specifications do not establish that the term is the name for a structure or class of structures known in the art admissions. Mr. Steuben support the commission's determination. Typically Mr. Steuben testified or was asked. Mr. Steuben is the phrase fasting mechanism, a phrase that denotes the definite structure or class of structures in the art, in the relevant art. He answered to me, fastening mechanism means anything that fastens. He was also asked, and I quote, now would any structure that's capable of performing that function meet the definition of a fastening mechanism? And she responded, yes. These admissions confirm that the terms do not have an established structural meaning. Additionally, testimony for Mr. Steuben explaining what fasting mechanism covers is actually a laundry list of fastening mechanisms that do not limit the terms to a class of structures. Mr. Steuben's list of possible fasting mechanisms included both mechanical components like screws, pins, rivets, and other methods for fastening, including welding. Ms. Fitzgerald, could I just ask you a question about that? If we were to conclude that fastening mechanism means fastener, would that have any impact on what we're doing here? I don't think so. Your honor here, the terms fastener is not in the record and what we need to do is look to the record. Right. And here, but my hypothetical was that we had already concluded that fastening mechanism means fastener. So we're past that point. So my question is, hypothetically, if we were to conclude that, would that change the outcome? There's nothing here in this record, though, defining what fastener means in the context of this case. I mean, there's no depth dictionary. There's no expert testimony. So we don't know what the scope of the fastener is in the context of this patent. And so I don't think it would change the outcome at all because here, you don't know what it means. And the only thing that we have in the record is the Blackbird case where the court would be importing a definition and discussion from that case into this investigation, which I is not appropriate. So,  I don't think it would change anything. If I may, I was going to return back to the heat staking and the welding testimony from Mr. Steuben, which are not even mechanisms here. These different methods of fastening are not mechanisms and do not establish that fastening mechanism is a class of structures in the art. Mr. Barney referenced Greenberg, and this case is not a pin to the functional terms in Greenberg. Not every object that performs a function falls within a class of nouns like clamp or break discussed in Greenberg. For example, my foot is not a break. If I can use it to slow myself down on a bicycle, Mr. Steuben testimony that any. This is judge process. I'm sorry to interrupt, but time is short. So let me ask you a question, move you to retention member. And I just wondered how the shape of the identified cylindrical post or column plays or what role it plays in performing the claimed function. So what the commission did in construing the retention number was look to the only structure disclosed in the specification. And as you know, the specifications here is very limited with regard to the disclosure as to the retention number. There's one paragraph in the specification and there is one figure and that figure shows the retention number. There's nothing in the specification that describes the structure of the retention number. Only the functions that it carries out and that it interacts with the fastening detent. And here, what the commission did is look to this, the figure and figure 14 and specifically two 66 is the only structure illustrated and discussed for the retention number. And it's a cylinder. And what the commission did was provide height to this and that height. And it's that fastening mechanism or retention number. I'm sorry. With the recess or opening that carries out the function of restraining the structural bridge. And based on the figure, the catch two 68 received the illustrated cylinder to help restrain and secure the second confinement structure to the structural. I'm sorry. Restrain the structural bridge to a control module of the pair of control modules. So here what the commission did is look to the only disclosure possible in the specification to make it its determination as to the corresponding structure. Does it make a difference as judge Dyke, does it make a difference that we're talking about a structure here, which is a bit complicated as opposed to a situation, let's say where you're talking about a metal to metal fastening. Oh, we're going back to the fastening mechanism. I do think it makes a difference in that Mr. Steuben testimony that anything can do this is contrary to the disclosure, which does have more unique types of fasteners, right? They're not the pins, screws, rivets that Mr. Steuben said could be within as possible fastening mechanisms. And so I do think it does show an evidence that here the term is not the name for structure to a person of ordinary skill in the art. If there are no further questions, your honor I respectfully request that the court affirm the commission's determination. Okay. Mr. Kinsel, you're dividing time. So you've got seven minutes. Thank you. If it pleases the court grant Kinsel for Nintendo, I wanted to pick up if I could just on the last bit of the conversation between Ms. Mishano and judge Dyke regarding whether the fastening mechanisms described in the specification are conventional or otherwise. It is quite clear that we're not talking about conventional screws, nuts and bolts, for example, with respect to these fastening mechanisms, the specification discloses to two specific types of fastening mechanisms. One is a soft draw latch. And the other is a slotted guide aperture that interacts with an attachment boss. These are not conventional screws, nuts and bolts. And in fact, if you look at figure, for example, figure 28 at appendix two to three, you'll see that there are conventional screws shown in this, in this specification, or at least in this figure, those are never described as fastening mechanisms in the specification. So we're not talking about conventional screws and nuts and bolts. We're talking about something, something very different and something that's only defined in the claims by the function that it performs, as opposed to the structure that it has. And what we know based on the claims is that whatever the fastening mechanism is, it can perform the function of securing. And as council has already alluded to, Gainvise, his own expert agrees that this is just a purely functional definition that covers anything that fastens. And that's not structural. That's functional. That's very different from, for example, the screwdriver, the clamps and so on filters. And other examples that you see in, in Greenberg where, where a structure takes his name from the function of performs, but still denotes a particular structure or class of structures known in the art. Now I did also want to respond to something that Mr. Barney had mentioned. He said that Nintendo never made the argument that the soft draw latch and the slotted guide aperture were not conventional. We've never made that argument below. The fact of the matter is that Gainvise never suggested that retention member, or sorry, fastening mechanisms meant conventional fasteners, such as nuts and bolts or screws. Gainvise's position has always been. And in fact, I think Mr. Barney reiterated it again during oral argument, that fastening mechanism just means anything that fastened. So we're talking about scotch tape. We're talking about your fingers, holding two things together. We're talking about literally anything that can perform that function. And that's the very, very definition of a means plus function term. In terms of the retention member structure, the only real difference between the commission's position and Nintendo's position is on the corresponding structure for retention member. The court need not necessarily reach that decision to affirm the commission's judgment of no violation. Since Gainvise has conceded that if the 112 F construction from the commission is affirmed, there's no, there's no violation. Having said that Nintendo's position is that the specification doesn't describe any corresponding structure for this retention member. The commission focused on the circular element two 66 in figure 14 as the retention member. But in fact, the specification describes two different things as the retention member specifically two 66 and two 68. And while the commission, found that two 68 was a typo, the reference to two 68 was a typo that's simply wrong. But in any case, the specification does not clearly link any of these structures to the perform to, to the function that's supposed to be performed. The, the quid pro quo for using the kind of functional language that Gainvise used in his claims is to clearly link the structure in the structure to the function. And there is no clear linkage between two 66 and the function of restraining a control module to a structural bridge. And so the, the, the, the court should either find, either affirm the commission on the grounds that the that there's no infringement on a no or affirm the commission on the grounds that there's no infringement on a  And so the commission should have the right to decide whether or not the control module is valid as indefinite. Unless the court has particular questions for me, I'll yield the rest of my time. Thank you. Thank you, Mr. Barney. Three minutes on rebuttal, please. Thank you, your honor, just a few points. And I'm just going to do this in reverse order. I believe Mr. Kinsel just conceded that they did in fact, waive this argument that that the softball latch and the other fastening mechanisms disclosed in the patent are, are unusual and novel. I expected when he said that we've accused them of waiver, that he was going to point your honor for something in the record where they raised the argument. The fact of the matter is he, they didn't raise the argument and he couldn't point to anything in the record where they did raise it second. And so I don't think it would be appropriate to allow them allow that argument to essentially have oxygen here when we never had a chance to actually rebut it during the proceedings below, because had we had that opportunity, we absolutely would have rebutted that argument very forcefully with evidence on the question of whether Greenberg, whether this case is like Greenberg council said, this case is very different. The fastening mechanism is very different from a term like they taunt or a clamp or filter. He doesn't explain why a fastening mechanism fastening is a noun that's established by the dictionary definitions that were set forth in the Blackbird decision. We also made that point to the ALJ during oral argument. Fastening is a noun and it is synonymous with fastener. A fastener is no different than a detente, a clamp or a filter in terms of it is something that takes its name from structure. And this court has a long, a long tradition after Greenberg of noting that many terms take their name from structure. And yes, those do tend to be broad terms, but as the court has pointed out many times, it is the claim drafters prerogative to use broad terminology and any risk they take with respect to the scope of that claim reading on the prior art is their risk. But that does not mean that the mere breadth of a term like fastener or detente is thrown into the one 12 F category merely because of its breadth. And I believe that's what the AF, I believe that's what the commission did here. It had a response to the sheer breadth of the term fastening mechanism and it, it, it confounded breadth of, of a structural breadth with lack of structure, which is incorrect under Greenberg. And the last point that I would like to make is just to respond to Ms. Fisher, Rao who said that there was no diction dish when she was asked, what would you do if, if the court were to find that fastener and fastening mechanism were synonymous? And she said, well, the problem is there's no dictionary definition of a fastener in this case. First of all, I really don't think we need a dictionary definition of fastener in this day and age, but even if we did, there are dictionary definitions set forth in the game vice, excuse me, in the Blackbird district court decision, which we cited and relied upon below that decision sites the Webster's third new international dictionary, as well as the Oxford English dictionary, making the point that the word fastening is a noun and it's interchangeable with the word fastener. And we also submitted additional dictionary definitions in our briefing to the commission. And those are included in the appendix in this appeal. So I just disagree dictionary definitions upon with the court could rely unless there's any questions. It sounds like I'm finished. Yes. Thank you. We thank all sides and the cases submitted that concludes our proceeding for this morning. Thank you. The honorable court is adjourned from day to day.